Filed 8/3/26  P. v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085437 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN437175) |
| JEFFREY R. JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge. Affirmed with directions.

Charles Thomas Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, A. Natasha Cortina and Liz Olukoya, Deputy Attorneys General, for Plaintiff and Respondent.

Jeffrey R. Johnson brandished a corkscrew and told Timothy Cross, "Call my mom or I'm going to gouge your eyes out." A jury convicted Johnson of making a criminal threat. The trial court sentenced him to three years in prison, which was less than his presentence custody time. Johnson was accordingly released on parole.

On appeal, Johnson contends the trial court erred by failing to instruct the jury on the lesser included offense of an attempted criminal threat. He argues the instruction was warranted by evidence that Cross's fear was not sustained. He also claims the court erred by failing to apply his presentence custody credit to his parole period. For reasons we explain, we affirm the judgment with directions for the court to modify the abstract of judgment, noting that Johnson's excess credits must be applied to his parole period.

## FACTUAL AND PROCEDURAL BACKGROUND

For a week in August 2022, Cross noticed Johnson "prowling around the neighborhood" and "talking loudly to himself" or an imaginary person. The morning of August 20th, Cross spotted Johnson in the Vista Village shopping plaza. Cross, who uses a wheelchair, "sequestered" himself near a dumpster enclosure, hoping to avoid Johnson. But Johnson "appeared around that trash enclosure abruptly and scared the heck out of" Cross. Johnson asked Cross to call his mother for him. Cross said no and Johnson walked away.

About a minute later, Johnson returned. He had a wine opener in his closed fist, with the corkscrew tool poking through his fingers. He held the corkscrew about 6 to 12 inches from Cross's face. Johnson said, "Call my mom or I'm going to gouge your eyes out." Cross felt "defenseless in a wheelchair," "quite frightened," and "worried." He called 911 right away.

2

Johnson continued aiming the corkscrew at Cross's face—for about 10 or 15 seconds—until Cross indicated he had called the police, at which point Johnson fled.

In the 911 call, which lasted more than seven minutes, Cross reported that Johnson "came up to [him] and threatened [him]" with a wine opener. Johnson "got right in [his] face" and "said he was gonna gouge [his] eyes out." Cross told the operator he was "afraid" that Johnson was going to hurt him or somebody else. Once Cross knew the police officers were on the way, he "move[d] around front" of the shopping plaza to determine whether he could see Johnson, reiterating, "Because if I can still see him, ... I'm afraid he's gonna hurt me or somebody, because he got right in my face ... with a [corkscrew]."

At trial, Cross maintained he was afraid because he was in a wheelchair and therefore limited in his ability to protect himself. He was in fear from the time Johnson brandished the corkscrew until he left his sight— roughly 20 seconds—and even then he was worried that Johnson would come back. His fear and worry only subsided once the police officers arrived.

The prosecution charged Johnson with making a criminal threat (Pen. Code,[1] § 422) and attempted robbery (§§ 664/211). As to both counts, it was alleged he personally used a deadly and dangerous weapon (corkscrew) (§ 12022, subd. (b)(1)). During trial, the court granted Johnson's motion for judgment of acquittal on the attempted robbery count. (See § 1118.1.)

---

[1]     Further undesignated statutory references are to the Penal Code.

The jury convicted him of making a criminal threat and found the deadly weapon allegation true.[2]

The court sentenced Johnson to two years in prison for the criminal threat plus one year for the weapon enhancement. It granted him 1,621 days of presentence custody credits—811 days of actual credit and 810 days of conduct credit under section 4019. Because Johnson's custody credits exceeded the term imposed, he was released on parole at sentencing.

## DISCUSSION

### A. *Instructional Error*

Johnson did not ask the trial court to instruct the jury on the lesser included offense of an attempted criminal threat. He nevertheless contends the court had a sua sponte duty to instruct the jury on the lesser offense based on evidence that Cross's fear was not sustained.

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened,

---

[2]  In a consolidated information, the prosecution charged Johnson with two other offenses committed against a different victim around the same time—namely, battery with serious bodily injury (§ 243, subd. (d)) and assault by mean likely to produce great bodily injury (§ 245, subd. (a)(4)). The jury could not reach a verdict on these counts and the court dismissed them on the prosecution's motion.

4

a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228 (*Toledo*).) As to the fourth element, "[c]ase law defines 'sustained fear' as 'a period of time that extends beyond what is momentary, fleeting, or transitory.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634 (*Brugman*).) Fear may be sustained even if it exists only during the incident itself. (*Ibid*.; see, e.g., *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 ["the minute during which [victim] heard the threat and saw appellant's weapon qualifies as 'sustained' "].)

An attempted criminal threat is a lesser included offense of making a criminal threat. (*Toledo*, *supra*, 26 Cal.4th at p. 230; *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607.) This inchoate offense can be committed in a variety of ways. (*Toledo*, at p. 231.) For instance, "if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*Ibid*.)

"A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. 'The rule's

5

purpose is ... to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403, citations omitted.) "In considering whether the trial court had a sua sponte duty to instruct the jury on lesser included offenses, we construe the evidence in the light most favorable to the appellant." (*People v. Smith* (2021) 70 Cal.App.5th 298, 308.)

Johnson highlights three areas of Cross's testimony as constituting substantial evidence that Cross's fear was momentary, fleeting, or transitory. Viewed in context, however, the only reasonable interpretation of this evidence is that Cross's fear was sustained. First, Johnson points to evidence that Cross's fear only lasted 20 seconds. As we have noted, however, fear may be considered sustained even if it exists only during the incident itself. (*Brugman, supra*, 62 Cal.App.5th at p. 634.) Here, Cross unambiguously testified that he was "frightened," "afraid," and "worried" from the moment Johnson brandished the corkscrew at least until Johnson left his sight and arguably longer. Although Cross characterized his subsequent emotion as "worried," he was worried *that Johnson would return*. The only reasonable inference to be drawn from that testimony is that he remained afraid of Johnson. Indeed, toward the end of the seven-minute 911 call, Cross peeked around the corner to see whether Johnson was still in the area, reiterating, "Because, if I can still see him, ... I'm afraid he's gonna hurt me or somebody, because he got right in my face with a – with a [corkscrew]." Cross only felt safe and worry free once the police arrived a few minutes after that. This unequivocally demonstrates that Cross's fear—lasting well beyond the threat itself—was sustained, not momentary, fleeting, or transitory.

Second, Johnson argues there is evidence that Cross called 911 because he feared for others' safety, not his own as required by section 422. To be

sure, Cross testified at one point that he called 911 "[b]ecause [he] was threatened and there's a school very close to the village and school kids cruise through that village all the time. Also, mothers like to walk through the village with their babies and in their little baby carts." During his 911 call Cross similarly stated that he called "because [he] was afraid [Johnson] was – [Johnson] was either gonna hurt [him], or [Johnson] was gonna hurt somebody else." These statements plainly indicate that Cross was afraid for others' safety *in addition to* his own.

Third, Johnson emphasizes the fact that Cross's tone of voice during the 911 call was calm and matter of fact. We have listened to a recording of the call and acknowledge that Cross communicated to the operator calmly and clearly. At the same time, using that tone of voice, Cross explicitly stated he was afraid that Johnson was going to hurt him. In our view, the only rational interpretation of the call is that Cross was able to maintain a steady tone *while* afraid, not that he was *not* afraid.

In sum, there was no discernable evidence that Cross's fear was anything less than sustained. The trial court therefore did not err in failing to instruct the jury sua sponte on an attempted criminal threat.

## B.    *Excess Credits*

Johnson also claims the trial court erred by failing to apply his excess presentence custody credits to his parole period. He asks us to direct the trial court to deduct 526 days—the 1,621 days of credit he earned minus the 1,095 days required to satisfy his three-year prison term—from his parole period.

It is true that any excess presentence custody credits that a defendant accrues must be applied to his parole period. (*People v. Morales* (2016) 63 Cal.4th 399, 405, citing § 2900.5, subds. (a) & (c).) But there is no error here

because it is the Department of Corrections and Rehabilitation and the Board of Parole Hearings that determine when a defendant is discharged from parole, and any excess credits are taken into account. (See §§ 3000, subd. (b) & 3001; Cal. Code Regs., tit. 15, §§ 2515, 2345, 2535–2537.) In an abundance of caution, we will direct the trial court to amend the abstract of judgment to note that Johnson's excess credits shall be applied to his parole period.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare and send a certified copy of an amended abstract of judgment to the Department of Corrections and Rehabilitation, noting that Johnson's 526 days of excess presentence custody credit are to be applied to his parole period.


DATO, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.

8